ORAL ARGUMENT NOT YET SCHEDULED

BRIEF AND ADDENDUM FOR APPELLEE

———————————————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

No. 11-3111

———————————————

UNITED STATES OF AMERICA,                    Appellee,

v.

ROLAND J. BAILEY,                    Appellant.

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH TROSMAN
ELIZABETH H. DANELLO
NANCY JACKSON
* AMANDA J. WINCHESTER
D.C. Bar #488798
Assistant United States Attorneys

* Counsel for Oral Argument
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

Cr. No. 03-441 (RBW)

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), appellee hereby states as follows:

## Parties and Amici

The parties to this appeal are appellant, Roland J. Bailey, and appellee, the United States of America. There are no amici.

## Rulings Under Review

This appeal follows a resentencing by the Honorable Reggie B. Walton. This Court ordered a limited remand of the record, for a determination of whether resentencing was appropriate, as part of appellant's direct appeal: *United States v. Bailey*, 622 F.3d 1, 12 (D.C. Cir. 2010). Appellant alleges that the district court erred in re-imposing its original sentence, and seeks a remand for further proceedings.

## Related Cases

The appeal of Anthony Rice, appellant's co-defendant at trial, is separately pending before this Court (No. 06-3166). On February 17,

2010, this Court issued an Order directing that Rice's appeal no longer be calendared with this case.

## STATUTES AND REGULATIONS

Pursuant to D.C. Circuit Rule 28(a)(5), appellee states that all pertinent statutes and regulations other than those attached hereto are contained in the Addendum to the Brief for Appellant.

# TABLE OF CONTENTS

COUNTERSTATEMENT OF THE CASE ........................................... 1

SUMMARY OF ARGUMENT ..................................................... 6

ARGUMENT.................................................................. 7

I.    Appellant's Sentence Should Be Upheld. ................................... 7

      A.   Background........................................................ 8

           1.   Appellant's December 22, 2006, Sentencing................. 9

           2.   The Direct Appeal....................................... 13

           3.   Appellant's December 2, 2011, Resentencing ............. 15

      B.   Appellant Has Waived His Sentencing Challenges........... 17

      C.   Even  if  Not  Waived,  Appellant's  Sentencing
           Challenges Are Without Merit.......................... 23

           1.   The  District  Court  Did  Not  Commit  Plain
                Procedural Error.......................................... 23

                a.   Standard of Review.............................. 23

                b.   Analysis........................................ 24

           2.   Appellant's   Sentence   was   Substantively
                Reasonable. ............................................ 31

                a.   Standard of Review.............................. 31

                b.   Analysis........................................ 31

II.   The District Court Did Not Err By Failing to Resolve
      Continuing Allegations of Grand-Jury Impropriety................. 35

      A.   Background....................................................... 35

B.  The District Court's April 18, 2011, Order Resolved the Issue to be Addressed on Remand. ............................... 40

    1.  Standard of Review ...................................................... 40

    2.  Analysis ........................................................................ 40

C.  The District Court Did Not Err By Failing To Resolve The Additional Franchak Grand-Jury Challenge. ............ 42

CONCLUSION ..................................................................... 47

# TABLE OF AUTHORITIES*

*American Methyl Corp. v. E.P.A.,* 749 F.2d 826 (D.C. Cir. 1984) .......... 45

*Bank of Nova Scotia v. United States*, 478 U.S. 250 (1988) ................... 43

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995) ......... 18

*Gall v. United States*, 552 U.S. 38 (2007) .............................................. 31

*Harmelin v. Michigan*, 501 U.S. 957 (1991) ........................................... 33

*Hartman v. Duffey*, 19 F.3d 1459 (D.C. Cir. 1994) ................................. 18

*In re Sealed Case*, 527 F.3d 188 (D.C. Cir. 2008) .................................. 27

*Kimbrough v. United States*, 552 U.S. 85 (2007) .............................. 5, 14

*Pepper v. United States*, __ U.S. __, 131 S.Ct. 1229 (2011) ................... 21

*Rita v. United States*, 551 U.S. 338 (2007) ...................................... 13, 24

\* *United States v. Bailey*, 622 F.3d 1
  (D.C. Cir. 2010) ...............................................3, 5, 13-14, 20, 37, 42

\* *United States v. Blackson*, 709 F.3d 36 (D.C. Cir. 2013) ...................... 21

*United States v. Booker,* 543 U.S. 220 (2005) ...................................... 5, 9

*United States v. Calandra*, 414 U.S. 338 (1974) ................................... 43

*United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005) ........................... 14

*United States v. Dorcely*, 454 F.3d 366 (D.C. Cir. 2006) ....................... 31

---

\* Authorities upon which we chiefly rely are marked with asterisks.

*United States v. Draffin*, 286 F.3d 606 (D.C. Cir. 2002) ........................ 28

*United States v. Farley*, 607 F.3d 1294 (11th Cir. 2010)........................ 34

*United States v. Fiallo-Jacome*, 874 F.2d 1479 (11th Cir. 1989)........... 18

*United States v. Garcia-Garcia*, 927 F.2d 489 (9th Cir. 1991).............. 28

*United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) ........... 25, 31

*United States v. Gibson*, 708 F.3d 1256 (11th Cir. 2013)....................... 34

*United States v. Lawson*, 494 F.3d 1046 (D.C. Cir. 2007)...................... 31

*United States v. Leonzo*, 50 F.3d 1086 (D.C. Cir. 1995)......................... 19

*United States v. Lewis*, 433 F.2d 1146 (D.C. Cir. 1970)........................ 42

*United States v. Locke*, 664 F.3d 353 (D.C. Cir. 2011)........................... 26

*United States v. Mitchell*, 996 F.2d 419 (D.C. Cir. 1993)....................... 40

*United States v. Negroni*, 638 F.3d 434 (3d Cir. 2011) .......................... 22

\* *United States v. Olano*, 507 U.S. 725 (1993) ............................... 23-24, 28

*United States v. Pinnick*, 47 F.3d 434 (D.C. Cir. 1995).......................... 27

*United States v. Romero*, 491 F.3d 1173 (10th Cir. 2007)...................... 23

*United States v. Saro*, 24 F.3d 283 (D.C. Cir. 1994) ......................... 29-30

*United States v. Settles*, 530 F.3d 920 (D.C. Cir. 2008) ........................ 24

*United States v. Shealey*, 641 F.3d 627 (4th Cir. 2011) ......................... 34

*United States v. Sheehan*, 512 F.3d 621 (D.C. Cir. 2008) ...................... 42

*United States v. Simpson*, 430 F.3d 1177 (D.C. Cir. 2005) ..................... 27

*United States v. Spriggs*, 102 F.3d 1245 (D.C. Cir. 1997)....................... 28

*United States v. Villafuerte*, 502 F.3d 204 (2d Cir. 2007) ...................... 23

\* *United States v. Whren*, 111 F.3d 956 (D.C. Cir. 1997),
    *cert. denied*, 522 U.S. 1119 (1998) ........................................... 18-20

## OTHER AUTHORITIES

18 U.S.C. § 3553(c)(2)............................................................. 28

21 U.S.C. § 841(a)(1) ........................................................... 2, 8

21 U.S.C. § 841(b)(1)(B) ......................................................... 8

21 U.S.C. § 841(b)(1)(B)(ii)....................................................... 2

21 U.S.C. § 846.................................................................. 2

21 U.S.C. § 963 .................................................................. 1

28 U.S.C. § 994(h) ............................................................... 9

Fed. R. Crim. P. 32 (i)(3)(B) ..................................................... 29

U.S.S.G. § 4B1.1(b) .............................................................. 8

U.S.S.G. § 4B1.1(b)(A) ........................................................... 8

## ISSUES PRESENTED

I.   Whether the district court erred procedurally or substantively by resentencing appellant to the same life sentence on remand, where appellant has waived these claims by failing to raise them in his first appeal, and, even if not waived, his claims are without merit.

II.   Whether the district court erred by failing to resolve continuing allegations of grand-jury impropriety, where, on remand, the district court issued an order confirming that no false testimony had been presented to the grand jury, and where appellant's newly-raised claims of grand-jury impropriety do not merit relief even if accepted as true.

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 11-3111

UNITED STATES OF AMERICA,    Appellee,

v.

ROLAND J. BAILEY,    Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR APPELLEE

## COUNTERSTATEMENT OF THE CASE

On October 7, 2003, the grand jury issued an indictment (D.E. 1)

charging appellant and 18 other individuals in Count One with

conspiring to import one kilogram or more of heroin and five kilograms

or more of cocaine, in violation of 21 U.S.C. § 963, and in Count Two

with conspiracy to distribute and possess with the intent to distribute

one kilogram or more of heroin, five kilograms or more of cocaine, and

fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846.[1]
Appellant was also charged in Count Eight with unlawful possession
with intent to distribute 500 grams or more of cocaine (PWID) in
violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii).[2]

On November 17, 2004, appellant filed a motion seeking to
suppress the kilogram of cocaine that was seized from him on July 3,
2002, after he was observed participating in a suspected drug
transaction (D.E. 187).[3] The government filed an opposition to the
motion on December 1, 2004 (D.E. 209). On May 24, 2005, after a two-

---

[1] "App." refers to the "Volume One" appendix filed by appellant; "Sealed
App." refers to the sealed "Volume Two" appendix filed by appellant;
"D.E." refers to the district court docket entries; and transcripts will be
identified by date and page. Where appropriate, the trial transcripts
will be further designated as coming from the morning or afternoon
proceedings.

[2] On December 15, 2004, the grand jury issued a superseding
indictment intended to incorporate various factors relevant to the
Sentencing Guidelines. Apparently, appellant was not arraigned on the
superseding indictment, and the government dismissed it on February
7, 2006 (D.E. 420).

[3] This seizure formed the basis of the charge set forth in Count Eight.

2

day evidentiary hearing, the Honorable Reggie B. Walton denied the motion in an oral ruling (5/24/05 Tr. 90-96).[4]

On December 15, 2005, appellant filed a motion to dismiss the indictment (D.E. 379) alleging that certain testimony before the grand jury relating to the events of July 3, 2002, was inconsistent with testimony presented during the suppression hearing. The government filed an opposition on December 29, 2005 (D.E. 383). Judge Walton denied the motion on January 9, 2006 (1/9/06:pm Tr. 36).

Trial against appellant and one of his co-defendants, Anthony Rice, began before Judge Walton on January 9, 2006. On February 15, 2006, the jury found appellant guilty of the PWID offense charged in Count Eight and not guilty of the conspiracy charged in Count One (2/15/06 Tr. 4). On February 21, 2006, the court declared a mistrial on

---

[4] A thorough summary of the evidence adduced at the suppression hearing, and at trial, may be found in the government's brief associated with appellant's direct appeal (No. 07-3006), and in this Court's related opinion. *See United States v. Bailey*, 622 F.3d 1 (D.C. Cir. 2010).

3

Count Two after the jury was unable to reach a verdict regarding the conspiracy charged in that count (2/21/06 Tr. 14).[5]

On April 7, 2006, and May 15, 2006, appellant filed, respectively, a motion for a new trial and a memorandum of points and authorities in support thereof (D.E. 473, 487). Appellant renewed his claim that the motion to suppress should have been granted based on perceived inconsistencies between testimony presented to the grand jury and the government's evidence at the suppression hearing, and reiterated a claim that false testimony was presented to the grand jury. The government filed an opposition on August 3, 2006 (D.E. 527). On December 22, 2006, after hearing further argument from appellant and the government (12/22/06 Tr. 2-11, 13-17), Judge Walton denied the motion (*id.* 11-13, 18-19). On the same day, Judge Walton sentenced appellant to life in prison (*id.* 31-32; App. 79). Appellant filed a timely notice of appeal on December 27, 2006 (D.E. 564).

---

[5] The government dismissed that charge at the time of sentencing (12/22/06 Tr. 33). Rice was found guilty of Counts One and Two, the only offenses with which he was charged. The cases against the remaining defendants did not proceed to trial.

4

In a published opinion issued on October 26, 2010, this Court affirmed the judgment of conviction concerning appellant's motion to suppress evidence, but remanded the record to the district court, in light of *Kimbrough v. United States*, 552 U.S. 85 (2007), for consideration of appellant's policy-based objection to to the career-offender Guideline, and for a determination of whether resentencing was appropriate as a result. *See United States v. Bailey*, 622 F.3d 1, 12 (D.C. Cir. 2010).[6] This Court also ordered that, upon remand, the district court could issue a "promised order" confirming that it had reviewed *in camera* the alleged false testimony presented to the grand jury. *See id.* at 3, 12.

On December 2, 2011, the district court reimposed its original sentence after clarifying on remand that, at the time of appellant's original sentencing, it had understood its post-*Booker* authority to depart from the Guidelines, including the career-offender Guideline, for policy reasons (12/2/11 Tr. 2-3). Just as it had done at the original

---

[6] *Kimbrough*, decided after appellant's sentencing, held that in a post-*United States v. Booker,* 543 U.S. 220 (2005), advisory sentencing scheme, the district court can reject the Guidelines on policy grounds. *Bailey*, 622 F.3d at 10 (citing *Kimbrough*, 552 U.S. at 89).

5

sentencing, however, the district court rejected appellant's policy-based argument, and determined that a life sentence was appropriate (*id.* at 4-9). The district court also clarified that, on April 18, 2011, after reviewing the relevant grand-jury transcript and concluding that no false testimony had been presented, it had issued the promised order that this Court had contemplated would be issued on remand (*id.* at 2). On December 12, 2011, appellant noted a timely appeal from the reimposition of his life sentence (D.E. 868; App. 135).[7]

## SUMMARY OF ARGUMENT

Appellant could have readily argued, at the time of his initial sentencing and first direct appeal, that the district court made procedural errors or that his life sentence was substantively unreasonable. Because he failed to do so, he has waived any claim that the district court erred procedurally or substantively when it resentenced him to the same life sentence on remand. Even if appellant's sentencing challenges are not waived, they are without

---

[7] Appellant also filed a *pro se* "notice of appeal" from the judgment and sentence imposed on December 2, 2011 (App. 133).

merit because the district court did not commit plain procedural error at appellant's sentencing proceedings, or impose a substantively unreasonable sentence.

Moreover, the district court did not err by failing to resolve continuing allegations of grand-jury impropriety. To the contrary, the district court issued an order confirming that no false testimony had been presented to the grand jury, thereby resolving the only issue that this Court had directed it to consider on remand. Further, the district court was not required to resolve appellant's newly-raised allegations of grand-jury impropriety. Appellant forfeited the right to an evidentiary hearing on the matter, and appellant's claims do not entitle him to relief even if accepted as true.

## ARGUMENT

## I.    Appellant's Sentence Should Be Upheld.

Appellant claims that the district court erred procedurally and substantively when it reimposed the same life sentence on remand (Brief for Appellant at 15-26). His claims are without merit.

7

## A.    Background

Appellant's conviction for unlawful possession to distribute 500 grams or more of cocaine carried a statutory term of imprisonment of ten years to life. 21 U.S.C. §§ 841(a)(1), (b)(1)(B). Under the provisions of U.S.S.G. §§ 4B1.1(b), 4B1.1(b)(A), because: 1) appellant was over 18 years of age at the time of his offense, 2) his offense of conviction was a felony drug conviction, and 3) appellant had at least two prior felony convictions for either a crime of violence or a controlled substance offense, his criminal history category was automatically calculated as a Category VI, and his offense level was 37.[8] This criminal history category and offense level carried a possible sentencing range of 360 months to life in prison.[9]

---

[8] Appellant was 51 years old at the time of his sentencing on December 22, 2006. The offense at issue was his fifteenth conviction, six of which were drug offenses (12/22/06 Tr. 29). Appellant's prior convictions are listed at Sealed App. 9-14.

[9] At sentencing, the parties apparently agreed that if appellant had not been a career offender, his offense level would be level 26 and his criminal history category would be V (see 12/22/06 Tr. 22-23).

8

## 1. Appellant's December 22, 2006, Sentencing

Appellant's sentencing memorandum (D.E. 545) noted that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are advisory, and that under 18 U.S.C. § 3553(a), the court was required to arrive at a sentence that was "sufficient, but not greater than necessary" to comply with the purposes of sentencing. Appellant also argued that the career-offender Guidelines provision deserved little deference because it merely reflected the intent of Congress, set forth in 28 U.S.C. § 994(h),[10] that the Sentencing Commission ensure that the

---

[10] 28 U.S.C. § 994(h) provides:

The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and --

(1) has been convicted of a felony that is--

  (A) a crime of violence; or

  (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46; and

(2) has previously been convicted of two or more prior felonies, each of which is--

(continued . . . )

9

Guidelines call for a sentence near the maximum term authorized for the offense of conviction for persons in appellant's circumstance (D.E. 545). Finally, referring to a number of appellant's personal characteristics, the memorandum asked the court to apply a sentence without regard to the career-offender Guideline (D.E. 545).

The government's sentencing memorandum (D.E. 546) stated that even under *Booker*, the Guidelines remain an important factor for a district court to consider when calculating an appropriate sentence. The government argued that the fact that the career-offender Guideline reflected a congressional desire for persons with two prior felony convictions for crimes of violence or controlled substance offenses to be sentenced near the maximum provision if they commit a third such crime did not render it unreasonable, and that there was nothing in

---

(. . . continued)

      (A) a crime of violence; or

      (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46.

appellant's case that rendered the provision unfair with respect to him (D.E. 546).

During appellant's sentencing hearing on December 22, 2006, his counsel did not contest the career-offender calculation (12/22/06 Tr. 23). Instead, counsel challenged the career-offender Guideline itself by arguing briefly, without further elaboration, that the Guideline "double count[ed]" appellant's convictions, and that the Guideline was not "fair" (*id.* 23-24). In response, Judge Walton stated "I will have to deny that request" (*id.* 24).

Government counsel recommended, in light of appellant's criminal history, his conduct in the case, and the fact that he was a career offender, a sentence of life in prison because appellant had spent a "lifetime preying on the community" (12/22/06 Tr. 25-26). Appellant's counsel relied upon appellant's sentencing memorandum (12/22/06 Tr. 26). Counsel also acknowledged appellant's extensive criminal history, but argued it could be taken into consideration without rendering him a career criminal, thereby "double count[ing]" the history (*id.* 27). Counsel did not recommend a specific sentence, but asked the court to consider a number of factors, including appellant's age, work experience, family,

11

medical history, and history of substance abuse (*id.* 28). Appellant did not address the court when given the opportunity to do so (*id.* 28-29).

Judge Walton noted that this case represented appellant's fifteenth criminal conviction and the sixth time he had been convicted of activity related to the distribution of illegal drugs (12/22/06 Tr. 29). Appellant had been placed on parole or probation on a number of occasions, he had continued to engage in criminal activity, and there had been at least three unsuccessful attempts to treat appellant's drug addiction (*id.*).

The court discussed at length why it viewed appellant as engaging in activity, particularly drug dealing, that destroys lives and the ability of people to enjoy their communities (12/22/06 Tr. 29-30). Stating that appellant had "worn out [his] welcome" by continuing to commit crimes, the court found no appropriate alternative for appellant other than prison (*id.* 30). Because of appellant's age (51) and history, the court saw no reason to believe that appellant was going to change, and opined that appellant was going to remain a criminal for the rest of his life. The court stated its belief that the appropriate place for such persons was in prison, and sentenced appellant to life imprisonment (*id.* 31).

## 2. The Direct Appeal

On direct appeal, appellant claimed that the district court erred in denying his motion to suppress the drugs seized from his car, because the police had observed no criminal activity on his part and no crime had been reported, and thus neither probable cause nor articulable suspicion existed for his arrest. Appellant also sought a remand for resentencing based on the claim that the sentence imposed was a result of Judge Walton's mistaken belief that he could not consider a policy-based objection to the career-offender Guideline.[11]

This Court recognized that, at sentencing, the district court had discussed the "harsh and deleterious effects of appellant's illegal drug activities on the community," and had concluded from appellant's criminal record that a life sentence was appropriate. *Bailey*, 622 F.3d at

---

[11] Appellant did not claim that the district court improperly calculated his Guidelines level as a career offender, or that the within-Guidelines sentence imposed upon him was unreasonable (Brief for Appellant, Appeal No. 07-3006, at 44-45). *See also Bailey*, 622 F.3d at 10 ("Appellant concedes that this [C]ourt may presume a sentence within the guideline range is reasonable, *see Rita v. United States*, 551 U.S. 338, 351 [] (2007), and he does not appeal the reasonableness of his life sentence independent of his legal argument that the district court should have rejected the career offender guideline.").

11. Nonetheless, this Court concluded that it was "unclear" whether the district court exercised the option afforded by *Kimbrough* and either rejected appellant's policy objection to § 4B1.1 on the merits or regarded the objection as inappropriate in view of appellant's criminal record. *Id.* Accordingly, this Court affirmed the judgment of conviction concerning appellant's motion to suppress evidence, but "remand[ed] the record to the district court to address appellant's policy objections to § 4B1.1 of the Guidelines and to 'determine whether it would have imposed a different sentence materially more favorable to the defendant had it been fully aware of its authority.'" *Id.* (citing *United States v. Coles*, 403 F.3d 764, 770 (D.C. Cir. 2005)). *See also id.* at 12 (remanding "for consideration of appellant's policy objection to § 4B1.1 of the Guidelines, and for a determination of whether resentencing is appropriate as a result").[12]

---

[12] The Court also suggested that, on remand, the district court could address appellant's objection that it had failed to issue a promised order in response to appellant's claim that false testimony was presented to the grand jury. *Bailey*, 622 F.3d at 12.

14

### 3.    Appellant's    December    2,    2011, Resentencing

At appellant's December 2, 2011, resentencing, the district court made clear that it had fully understood at appellant's sentencing that the Guidelines are advisory and that it "could reject the [G]uidelines[,] including the career [-offender] [G]uidelines[,] for policy reasons" (12/2/11 Tr. 2-3). When given the opportunity to present additional argument, defense counsel again urged the district court to reject the career-offender Guideline because it was "unfair" as applied to appellant (*id.* at 3-4).

The district court found that, although it could conceive of circumstances under which it might view the career-offender Guideline as unfairly applied on a case-by-case basis, it did not believe the Guideline was unfairly applied to appellant (12/2/11 Tr. 4-5). Indeed, the district court stated that it would have sentenced appellant to the same life sentence, even if the career-offender Guideline had not applied in this case (*id.* at 5).

The district court explained how it had arrived at appellant's life sentence by reiterating, and expanding upon, many of the comments

15

that it had made at appellant's original sentencing.[13] The district court noted that at the time of appellant's arrest, he was caught with one kilogram of powder cocaine, which he admitted he intended "to cook into crack cocaine which would then be sold on the streets of this area" (12/2/11 Tr. 5). In addition, the court noted that appellant had admitted he had made approximately 20-30 one-to-two kilogram purchases of powder cocaine from "Mr. Webb," who was a principal in the charged conspiracy (*id.* at 5). On one occasion, when appellant was acting in conjunction with other individuals, he purchased four kilograms of powder cocaine (*id.*). Accordingly, a "tremendous amount" of cocaine was distributed on the streets as a result of appellant's activity (*id.* at 5-6). Appellant's distribution activities necessarily had a "devastating impact" on the community, which the district court took into account as a "major fact[or]" in deciding the appropriate sentence (*id.* at 5-6).

Reiterating appellant's "extensive criminal history," the district court again noted that appellant had fifteen previous convictions,

---

[13] The district court adopted the statements that it had made at appellant's December 22, 2006, sentencing proceeding, and those made at a June 17, 2011, status hearing following this Court's remand (12/2/11 Tr. 4).

16

including one prior conviction for a "distribution offense" (12/2/11 Tr. 6-7). Moreover, appellant had been arrested several times over for distribution-related activity, and in two additional cases where appellant had been convicted of narcotics possession, the underlying facts suggested that he had been selling drugs (*id.* at 6-7). The district court noted that, although appellant had been back in the community "for some period of time" before this offense, the reality was that this offense had involved "major drug distribution activity" (*id.* at 7). Moreover, appellant had been on community supervision, without success, on many occasions (*id.*). Accordingly, the court reiterated its view that, despite having been given previous opportunities, appellant had decided that he wanted "to live a life of crime," and had worn out his welcome (*id.* at 8). The court concluded that the only way the community could be adequately protected from appellant's criminal activity was for appellant to "be locked up for the rest of his life," and reimposed the same life sentence (*id.*).

## B.    Appellant Has Waived His Sentencing Challenges.

Appellant has waived his claims that the district court erred procedurally and substantively when it reimposed the same life

17

sentence (Brief for Appellant at 15-26). The doctrine of waiver prevents defendants who previously could have challenged a district court decision on an earlier appeal to this Court from raising that issue in a second appeal. *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995); *Hartman v. Duffey*, 19 F.3d 1459, 1464 (D.C. Cir. 1994) ("a litigant who has sufficient opportunity to raise a challenge on an initial appeal but fails to do so is deemed to have waived the challenge and will not be allowed to argue the issue on a later appeal"); *United States v. Fiallo-Jacome*, 874 F.2d 1479, 1481 (11th Cir. 1989). The central purpose of the waiver doctrine is a prudential one; it maximizes judicial economy by channeling into the first appeal "issues whose early resolution might obviate the need for later rounds of remands and appeals." *Crocker*, 49 F.3d at 740.

In *United States v. Whren*, 111 F.3d 956 (D.C. Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998), this Court confirmed that the waiver doctrine applies to defendants, such as appellant, who challenge their sentences following remand to the district court. In *Whren*, the defendant appealed his conviction on substantive grounds, but did not challenge his sentence. *Id.* at 958. This Court reversed Whren's

18

conviction on one count and remanded his case to the district court for resentencing. *Id.* At resentencing, Whren argued that his original sentence on counts other than the vacated count had been wrongly calculated under the Sentencing Guidelines, and that he was entitled to the benefit of several downward departures. *Id.* This Court affirmed the district court's ruling that it lacked authority to consider whether Whren was entitled to these downward departures. *Id.* at 961. The Court held that a defendant cannot "raise an issue for the first time upon resentencing if he did have reason but failed nonetheless to raise it in the earlier proceeding." *Id.* at 960. "[A] defendant may argue at resentencing that the court of appeals' decision has breathed life into a previously dormant issue, but he may not revive in the second round an issue he allowed to die in the first." *Id.*

In so holding, this Court recognized that allowing defendants the opportunity to repeatedly revisit their sentences after remand would undermine the important policy objectives of "equity and efficiency." 111 F.3d at 959-60. If the government and the defendant are required to take only a single bite of the sentencing apple, *id.* at 959 (citing *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995)), then "[e]ach

19

party gets early notice of each other's position, and the district court can resolve all material issues early on -- when the record is fresh in mind -- and in a single proceeding, thereby minimizing the scope of any second proceeding." *Id.* at 959-60.

Here, as in *Whren*, appellant attempts to introduce "issues, arguments, and evidence that [] should have [been] introduced" before. 111 F.3d at 959. Appellant was sentenced to life imprisonment as a career offender under U.S.S.G. § 4B1.1 when he was originally sentenced on December 22, 2006. At the time of his initial sentencing and first direct appeal, appellant readily could have argued that the district court made procedural errors or that his sentence was substantively unreasonable. He failed to do so. No fact relevant to appellant's sentence has come to light now that was not available to him in 2006. Further, this Court's opinion considering the merits of his direct appeal did not make appellant's claims "newly relevant" to his sentence. *Id.* at 960. Indeed, the scope of this Court's remand order was quite limited. *See Bailey*, 622 F.3d at 12 (remanding to the district court "for consideration of appellant's policy objection to § 4B1.1 of the Guidelines, and for a determination of whether resentencing is

20

appropriate as a result"). Thus, appellant's request that this Court review his sentence for newly-raised procedural and substantive errors six years and one direct appeal after his original sentence was handed down amounts to nothing more than a demand for *de novo* resentencing, a reward expressly denied him by this Court in *Whren. See also United States v. Blackson*, 709 F.3d 36, 40 (D.C. Cir. 2013) (collecting cases and reaffirming principle that, "unlike the rule in some circuits, in this circuit the district court generally does not have authority to resentence a defendant *de novo*").[14]

---

[14] As appellant notes (at 20), all criminal sentences are a "package of sanctions." *Pepper v. United States*, __ U.S. __, 131 S.Ct. 1229, 1251 (2011). Hence, "'[b]ecause a district court's original sentencing intent may be undermined by altering one portion of the calculus, an appellate court when reversing one part of a defendant's sentence may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. § 3553(a).'" *Blackson*, 709 F.3d at 41 (quoting *Pepper*, 131 S.Ct. at 1251). But this Court accomplished that end by permitting the district court to reconsider appellant's policy-based objection to § 4B1.1 of the Guidelines and determine whether resentencing was appropriate as a result, not by reconsidering, in a subsequent appeal, newly-raised claims of procedural and substantive error. *Cf. Blackson*, 709 F.3d at 41-42 (noting "*Pepper* does nothing to undermine this circuit's general resentencing rules").

We do not suggest that, had the district court actually imposed a new sentence based upon its consideration of appellant's policy-based objection to the career-offender Guideline, appellant would not be able to challenge the procedural and substantive reasonableness of that sentence. Appellant would not have had a prior opportunity to appeal that sentence and, therefore, could not have waived any challenge as to either its procedural or substantive reasonableness. But appellant's failure to raise those claims in his initial appeal has waived them here, where the district court rejected appellant's policy-based objection and reimposed the same life sentence on remand. *See United States v. Negroni,* 638 F.3d 434, 440 n.4 (3d Cir. 2011) (noting government had waived any challenge to the substantive reasonableness of defendant's sentence, where it had failed to make that claim on initial appeal).

22

### C.   Even if Not Waived, Appellant's Sentencing Challenges Are Without Merit.

#### 1.   The District Court Did Not Commit Plain Procedural Error.

##### a.   Standard of Review

Because appellant did not object at sentencing to the many procedural errors he asserts on appeal, his claims of procedural error are subject to review, if at all, for plain error. *See, e.g., United States v. Villafuerte*, 502 F.3d 204, 207-08 (2d Cir. 2007) (applying plain-error review where defendant did "not object to [the] district court's alleged failure to properly consider all of the § 3553(a) factors"); *United States v. Romero*, 491 F.3d 1173, 1175-78 (10th Cir. 2007) (plain-error review applied where, despite requesting a below-Guidelines sentence, appellant did not object when the court purportedly failed to explain its reason for rejecting that request).

To prevail under the demanding plain-error standard, appellant must show that the district court made: (1) a legal error; that was (2) plain or obvious; and that (3) affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 733-734 (1993). Once plain error is established, this Court may exercise its discretion to correct plain error

only when the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 736-737.

### b.    Analysis

The district court did not err, let alone plainly err, in determining appellant's sentence. Appellant first contends that the district court erred by purportedly applying a presumption of reasonableness to the Guidelines range in this case. *See Rita v. United States*, 551 U.S. 338, 351 (2007) ("sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply"). Appellant cites no basis in the record for supposing that the district court applied a presumption of reasonableness to the within-Guidelines sentence it imposed. In any event, the district court in this case applied no such presumption. The district court made clear that it understood the advisory nature of the Guidelines, and arrived at appellant's within-Guidelines sentence only after it had reviewed the presentence investigation report; properly calculated the advisory Guidelines range; and considered the § 3553(a) sentencing factors and the parties' arguments. *See United States v. Settles*, 530 F.3d 920, 924-25 (D.C. Cir. 2008) (district court did not apply presumption of reasonableness to

24

within-Guidelines sentence where it engaged in similar sentencing analysis). Indeed, by considering all of the evidence and arguments presented, the district court subjected appellant's "sentence to the thorough adversarial testing contemplated by federal sentencing procedure" - a testing process espoused by the Supreme Court in *Rita*, 551 U.S. at 351.

Appellant next contends that the district court failed to adequately review and weigh each of the § 3553(a) sentencing factors (Brief for Appellant at 18-20). More specifically, appellant suggests that the court's sentencing determination was controlled exclusively by its view of appellant's prior criminal history and the "drug amount" involved in the conspiracy -- only two of the factors in the 3553(a) matrix (Brief for Appellant at 18-19).[15] Appellant, however, fails to account for the court's consideration of additional 3553(a) factors, both

_____

[15] To the extent that appellant challenges the weight accorded to these factors (see Appellant's Brief at 19-20), such an argument has no bearing on the procedural-error analysis. *See United States v. Gardellini*, 545 F.3d 1089, 1094 n.6 (D.C. Cir. 2008) ("[T]he Supreme Court has made clear [that] the procedural requirement that the district court 'consider' a particular § 3553(a) factor does not depend on how heavily the court weighs that factor.").

25

at the remand proceeding and at the original sentencing proceeding, which the court incorporated by reference (12/2/11 Tr. 4). Consideration of the entire record reveals that the district court articulated a detailed analysis of the § 3553(a) factors, and thoroughly explained the reason for its chosen sentence.

Indeed, in this case the district court's discussion touched upon the majority of the § 3553(a) factors, including the "nature and circumstances of the offense and the history and characteristics of the defendant," "the seriousness of the offense," and the goals of "promot[ing] respect for the law," "provid[ing] just punishment for the offense," "afford[ing] adequate deterrence," and "protect[ing] the public from further crimes of defendant" (12/22/06 Tr. 29-31; 12/2/11 Tr. 4-8). In addition, the district court was well aware of the relevant factors, as they were discussed in the parties' sentencing memoranda and during the parties' respective allocutions (see D.E. 545, 546; 12/22/06 Tr. 27-28). That was sufficient under this Court's precedent. *See United States v. Locke*, 664 F.3d 353, 358 (D.C. Cir. 2011) (holding that sentencing court "provided a well-reasoned basis for its decision," where judge discussed "the seriousness of the offense," the time period of the offense

conduct, defendant's role in offense conduct, and expressed doubts about defendant's remorse); *see also United States v. Simpson*, 430 F.3d 1177, 1186 (D.C. Cir. 2005) (holding that the district court properly considered the § 3553(a) factors where the court's explanation for its sentence "sound[ed] in the terms of § 3553(a)," even though it did not cite to the statute or "specifically refer to each [§ 3553(a)] factor"); *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008) ("district judge need not consider every § 3553(a) factor in every case").

Appellant's claim that the district court did not adequately state the reasons for its chosen sentence (Brief for Appellant at 19, 23) is also without merit. First, as discussed *supra*, the district court explained at length why it chose a life sentence. Second, appellant never asked the court to make more specific findings at his sentencing proceedings. Where, as here, a defendant neglects his "initial responsibility to ensure that the district court explains its reasoning for the record," this Court must "assume 'that the district court kn[ew] and applie[d] the law correctly.'" *United States v. Pinnick*, 47 F.3d 434, 439 (D.C. Cir. 1995) (quoting *United States v. Garcia-Garcia*, 927 F.2d 489, 491 (9th Cir.

1991)); *accord, e.g., United States v. Spriggs*, 102 F.3d 1245, 1263 (D.C. Cir. 1997).[16]

Furthermore, even if the district court erred in its articulation of the § 3553(a) sentencing factors, the error was neither "plain" nor "obvious." *Olano*, 507 U.S. at 733-734; *United States v. Draffin*, 286 F.3d 606, 610 (D.C. Cir. 2002) ("To hold . . . that a record at worst ambiguous supports reversal is hardly consistent with plain error review")(citation omitted). Indeed, appellant has failed to suggest any prejudice flowing from the district court's alleged failure to specifically articulate its analysis of each of the § 3553(a) factors on the record at the sentencing hearing. Thus, appellant has failed to satisfy *Olano*'s third and fourth requirements, that he demonstrate that his substantial rights were affected, and that any error seriously affected the fairness, integrity, or public reputation of his sentencing. *Olano*, 507 U.S. at 736-737.

---

[16] Because the district court imposed a sentence *within* the Guidelines range, the district court was not required to state its reasons for the sentence in the written judgment. See 18 U.S.C. § 3553(c)(2). Thus, appellant's suggestion (at 23 & n.5) that the district court procedurally erred in failing to state its reasons in a "statement of reasons form," *id.*, is clearly without merit.

Finally, appellant contends that the district court failed to resolve a "critical" factual dispute by relying upon a confession that appellant gave after his arrest (Brief for Appellant at 24-26). Although appellant now claims that this confession was a "disputed factual assertion in the PSR," he did not object to the PSR on that basis when he was originally sentenced in 2006. See 12/22/06 Tr. 19-25 (objecting to PSR on different grounds); Sealed App. at 23 (same). Where a defendant does not raise a timely objection to findings set forth in a PSR, the district court's adoption of those findings is reviewable only for plain error. *United States v. Saro*, 24 F.3d 283, 286 (D.C. Cir. 1994). Appellant cannot show any error here, let alone plain error, because the district court expressly disclaimed reliance on the disputed confession. See 12/2/11 Tr. 10-11 (district court explaining that it "would still reach the [same] conclusion" even if it had not considered the statements that appellant made at the time of his arrest). *See also* Fed. R. Crim. P. 32 (i)(3)(B) (for each presentence report matter still controverted by the time of sentencing, court must *either* rule on the dispute "*or* determine that a ruling is unnecessary either because the matter will not affect

29

sentencing, or because the court will not consider the matter in

sentencing") (emphasis added).[17]

---

[17] Similarly, appellant cannot show that the district court's other factual findings, which appellant claims (at 19-20) relied upon acquitted conduct and the district court's "personal view" of the drug trade, were clearly or plainly erroneous. *United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994) (this Court will not reverse a sentence unless the defendant shows that he was meaningfully prejudiced by the alleged error, which he can do only by showing a "reasonable likelihood that the sentencing court's obvious errors affected his sentence"). Taking the sentencing proceeding as a whole, it is clear that the district court sentenced appellant to life imprisonment based upon his extensive criminal history, the egregious nature of his offense, and his danger to the community, not because of acquitted conduct related to the charged conspiracy, or because of any personal views the court may have formed regarding the drug trade. To the extent the court referenced those matters, it did so only to underscore its view that appellant had involved himself, for an extended period of time, in the purchase and distribution of a large amount of cocaine (see 12/2/11 Tr. 5-6, 10-11). Even setting aside appellant's confession, in which he admitted to previous multi-kilogram purchases, the same conclusion can also be drawn from appellant's extensive criminal history, which includes many instances of distribution-related activity (see 12/2/11 Tr. 6-7). Thus, even if the district court somehow committed obvious error (which we do not concede), appellant cannot show that the error affected his sentence. Indeed, we note, with respect to acquitted conduct, that it is not at all clear the district court in referring to the conspiracy actually relied on acquitted conduct and, in any event, as appellant concedes (at 22), a sentencing judge may properly rely on acquitted conduct.

30

### 2. Appellant's Sentence was Substantively Reasonable.

#### a. Standard of Review

A district court's sentence is reviewed for reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). The reasonableness of the district court's sentence is reviewed under a deferential abuse-of-discretion standard. *Id.* "[I]t will be the unusual case when [this Court] reverse[s] a district court sentence – whether within, above, or below the applicable Guidelines range – as substantively unreasonable." *United States v. Gardellini*, 545 F.3d 1089, 1090 (D.C. Cir. 2008).

#### b. Analysis

Appellant argues that the district court abused its discretion by imposing an "unreasonably high" sentence of life imprisonment (Brief for Appellant at 22). His claim is without merit.

To begin with, appellant's sentence, which falls within the correctly calculated sentencing Guidelines range, is presumed reasonable by this Court. *United States v. Lawson*, 494 F.3d 1046, 1056 (D.C. Cir. 2007) (quoting *United States v. Dorcely*, 454 F.3d 366 (D.C. Cir. 2006)). *See also Rita*, 551 U.S. at 388. Although appellant recognizes this presumption (at 21), he fails to explain why the

31

presumption should not apply to him. For example, appellant complains (at 22) that he was given a life sentence "for possession with intent to distribute one kilogram of powder cocaine." But he fails to account for his significant criminal history, his status as a career offender, and the danger he posed to the community, which weighed heavily in the district court's determination that a life sentence was appropriate in this case (12/22/06 Tr. 29-32; 12/2/11 Tr. 4-8).

As the district court fully explained, appellant had previously admitted to making purchases involving a "tremendous amount" of powder cocaine that was converted into "crack" and sold on the streets of this area (12/2/11 Tr. 5). This case represents appellant's fifteenth criminal conviction and the sixth time he had been convicted of activity related to the distribution of illegal drugs (12/22/06 Tr. 29; 12/2/11 Tr. 6-7). Appellant had been placed on parole or probation on a number of occasions, he had continued to engage in criminal activity, and there had been at least three unsuccessful attempts to treat appellant's drug addiction (12/22/06 Tr. 29).

The court viewed appellant as engaging in activity, particularly drug dealing, that destroyed lives and the ability of people to enjoy their

32

communities (12/22/06 Tr. 29-30; 12/2/11 Tr. 5-6, 7-8). Stating that appellant had "worn out [his] welcome" by continuing to commit crimes, the court found no appropriate alternative for appellant other than prison (12/22/06 Tr. 30; 12/2/11 Tr. 8). Because of appellant's age and history, the court saw no reason to believe that appellant was going to change, and opined that appellant was going to remain a criminal for the rest of his life. Finally, the court stated its belief that the only way the community could be adequately protected from appellant's further criminal activity was for appellant to be "locked up" for the rest of his life (12/22/06 Tr. 31; 12/2/11 Tr. 8). Accordingly, the court imposed a life sentence.

Nothing in this record indicates that this is one of those "unusual case[s]" where the district court has abused its discretion and imposed a sentence that is substantively unreasonable. *Gardellini*, 545 F.3d at 1096. To the contrary, other courts have found that a life sentence is not unreasonable or disproportionate under similar circumstances. *See Harmelin v. Michigan*, 501 U.S. 957, 1002-03 (1991) (plurality opinion

of Kennedy, J., joined by O'Connor & Souter, JJ.)[18] (discussing the great harm that the crime of possessing cocaine with intent to distribute does to society and holding that a life without parole sentence is not disproportionate even for a first time offender); *see also United States v. Gibson*, 708 F.3d 1256, 1282-83 (11th Cir. 2013) (upholding as substantively reasonable defendant's life sentence in prosecution for possessing and distributing cocaine base, where sentencing court considered relevant statutory factors before determining that life sentence was necessary to avoid sentencing disparities, promote respect for law, and deter defendant from committing similar crimes in the future); *United States v. Shealey*, 641 F.3d 627, 634 (4th Cir. 2011) (upholding as substantively reasonable defendant's life sentence where district court had considered, *inter alia*, that appellant had distributed voluminous quantities of drugs and was a career offender). In sum, the district court did not abuse its discretion by sentencing appellant, as a career offender, to life imprisonment.

---

[18] Justice Kennedy's plurality opinion in *Harmelin* is the opinion of the Court on the proportionality issue. *See United States v. Farley*, 607 F.3d 1294, 1339-40 & n.30 (11th Cir. 2010).

34

## II.    The District Court Did Not Err By Failing to Resolve Continuing Allegations of Grand-Jury Impropriety.

Appellant claims (at 27-33) that the district court erred by failing to resolve continuing allegations of grand-jury impropriety. According to him, these allegations require a remand for further proceedings. His claims are without merit.

### A.    Background

On April 7, 2006, as part of his motion for new trial, appellant moved for reconsideration of the denial of an earlier motion to dismiss the indictment based on a claim that Detective Steven Manley had testified falsely before the grand jury. The court heard argument on the motion at appellant's sentencing proceeding on December 22, 2006. The government argued that, even assuming Detective Manley's grand-jury testimony was perjured (which it did not concede), appellant's motion should be denied because Manley's testimony was not presented to the grand jury that actually returned appellant's indictment (12/22/06 Tr. 13). Specifically, the government represented that

> [t]he grand jury that returned the indictment in this case heard about this incident from Officer [Stephen] Franchak. They did not hear from [Detective] Manley, nor were they read [Detective] Manley's previous transcript from a prior

35

grand jury. So none of the information that the defendant moves on in this motion was presented to the grand jury that indicted him. (12/22/06 Tr. 13.)[19]

In response, defense counsel requested that the court conduct an *in camera* review of the relevant grand-jury materials:

Your Honor, my request simply in reply is for the court to review [the proceedings of the grand jury that actually returned the indictment]. I understand the government's representations, but I am just concerned because it wasn't brought up in response to my motion when it was initially filed pretrial. And so that's the basis for my request . . . for the court to review that material. (*Id.* at 14.)

The court noted that it had "two members of the bar and members of the U.S. Attorney's Office who [were] representing that Manley's information was never presented to the grand jury" (*id.* at 18). Accordingly, the court credited the government's representations and denied the motion for reconsideration subject to an *in camera* review of grand-jury materials (*id.* at 18). The court noted that if the government's representations were inconsistent with what it reviewed then the court would have to vacate the sentence and revisit the issue;

---

[19] The government explained that Detective Manley's testimony was presented to the grand jury "to memorialize the situation" in September 2002, shortly after appellant's arrest (12/22/06 Tr. 17). Appellant's indictment was returned by an entirely different grand jury in October 2003 (*id.*).

36

otherwise it would "issue an order" stating that it had reviewed the grand-jury materials and that the materials were consistent with the government's representations (*id.* at 19). That same day, the court sentenced appellant as a career offender to life imprisonment.

On direct appeal, this Court sustained the verdict but remanded for resentencing. *United States v. Bailey*, 622 F.3d 1 (D.C. Cir. 2010). The Court suggested that on remand the district court could issue its "promised order" in response to appellant's claim that false testimony had been presented to the grand jury. *Id.* at 11-12.

Before the resentencing, appellant filed a *pro se* "motion for relief pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure," based upon his belief that a ruling had not been issued by the district court regarding the grand-jury testimony (12/2/11 Tr. 2). At the resentencing hearing on December 2, 2011, the district court noted that on April 18, 2011, it had issued an order finding that no perjured testimony had been presented to the grand jury (12/2/11 Tr. 2).[20] After

---

[20] The order stated that

> [u]pon the [c]ourt's *in camera* review of the grand jury testimony submitted to the [c]ourt by the government, the
> (continued . . . )

37

clarifying that it had issued the promised order, the district court indicated that it would issue a written order denying appellant's *pro se* motion (*id.*). The court then proceeded to resentencing, and it again imposed a sentence of life imprisonment (*id.* at 2-11).

Before the resentencing hearing adjourned, defense counsel mentioned another *pro se* filing, dated November 22, 2011, in which appellant suggested Officer Stephen Franchak had also testified falsely before the grand jury (12/2/11 Tr. 11). Appellant requested the opportunity to present evidence about the "validity" of Franchak's testimony (App. 115). Counsel proffered that appellant contended that when Officer Franchak testified before the grand jury: (1) Franchak testified in response to a question by the prosecutor that referenced the wrong date of arrest; and (2) Franchak falsely claimed that he had participated in the post-arrest interview of appellant (12/2/11 Tr. 12).

---

(. . . continued)

> [c]ourt has confirmed the government's earlier representation that no false testimony was presented to the grand jury concerning undercover police detective King Watts' ability to observe Walter Webb give illegal drugs to the defendant on July 3, 200[2], in an alley in the rear of a restaurant that was located at 1361 U Street, N.W. (App. 113).

The government objected to reopening the case for an evidentiary hearing (12/2/11 Tr. 13-14). The district court agreed, saying, "I wouldn't reopen it at this point," but it noted that defense counsel could "file something to raise the issue," which would give the government an opportunity to respond to appellant's new arguments (*id.* at 14). Defense counsel replied, "That's fine. I'll put something in writing." (*Id.*). The court said, "Obviously, his letter could be construed as a *pro se* motion, but I'll give you the opportunity to supplement it in some way if you think that's appropriate so that the matter can be properly before me and the government has the opportunity to respond. . . ." (*id.* at 15). Although defense counsel promised to "file something in writing that fairly encapsulates Mr. Bailey's contentions" (*id.* at 15-16), the record does not reflect that counsel filed any such pleading.

On December 12, 2011, appellant noted an appeal from his resentencing. Appellant's brief was due to be filed on June 11, 2012. On June 8, 2012, appellant, through appellate counsel, moved to remand the appeal for an evidentiary hearing on appellant's claim that Officer Franchak had testified falsely before the grand jury. On June 13, 2012, this Court suspended the briefing schedule pending further order. On

39

June 21, 2012, the government filed an opposition to appellant's motion to remand for an evidentiary hearing. On August 20, 2012, this Court denied appellant's motion to remand for an evidentiary hearing, noting that appellant had not demonstrated that a remand was warranted. On December 28, 2012, new appellate counsel was appointed to represent appellant, and this appeal followed.

## B. The District Court's April 18, 2011, Order Resolved the Issue to be Addressed on Remand.

### 1. Standard of Review

At his resentencing, appellant did not object to the district court's April 18, 2011, order, or suggest that it did not adequately resolve the issue to be addressed on remand. Accordingly, appellant's claim, raised for the first time on appeal, is reviewable for plain error only. *See United States v. Mitchell*, 996 F.2d 419, 422 (D.C. Cir. 1993) (plain-error review where issue raised for first time on appeal).

### 2. Analysis

Appellant cannot show any error, much less plain error, because the district court satisfied this Court's directive by issuing its "promised order" on remand.

The district court, in denying appellant's motion to dismiss the indictment, indicated that, subject to an *in camera* review of grand-jury materials, it would accept the government's representations that Detective Steven Manley had not presented false testimony, or even appeared, before the grand jury that indicted appellant (12/22/06 Tr. 13-18). The court noted that if the government's representations were inconsistent with the materials it reviewed, then the court would have to vacate the sentence and revisit the issue; otherwise it would "issue an order" stating that it had reviewed the grand-jury materials and that the materials were consistent with the government's representations (*id.* at 19). On April 18, 2011, after it had reviewed the relevant grand-jury materials, the district court issued the promised order "confirming that no false testimony was presented to the grand jury" (App. 113).

Appellant now argues (at 29-30, 31) that the district court's order "resolved nothing," and failed to specify the particular grand-jury materials and testimony that the court reviewed. As an initial matter, a timely objection at the resentencing hearing court could have resulted in development of the record on these points. *United States v. Sheehan,*

41

512 F.3d 621, 627 (D.C. Cir. 2008) (quoting *United States v. Lewis*, 433 F.2d 1146, 1152 (D.C. Cir. 1970)) (holding that purpose of timely-objection requirement "includes importantly the need for a record, developed by adversary processes, on which appellate consideration and resolution can safely proceed"). But in any event, the district court made clear that it would review "the proceedings of the grand jury that actually returned the indictment" (12/22/06 Tr. 14). Moreover, contrary to appellant's suggestion, the only "question" to be resolved on remand was "whether Detective Manley's testimony was false and if so, whether it had a spillover effect on the grand jury's determinations." *Bailey*, 622 F.3d at 12. The district court's order, which referred to Manley's allegedly false testimony, and clarified that "no false testimony was presented," satisfied this Court's directive and adequately resolved the question to be addressed on remand.

### C.    The District Court Did Not Err By Failing To Resolve The Additional Franchak Grand-Jury Challenge.

Appellant has forfeited the opportunity to have an evidentiary hearing regarding Officer Franchak's testimony before the grand jury. Although at the resentencing, appellant's attorney said he would "file

42

something in writing that fairly encapsulates Mr. Bailey's contentions" (12/2/11 Tr. 15-16), counsel apparently elected not to file anything. Having declined the district court's invitation to present his claim properly, appellant is not entitled to a remand for purposes of an evidentiary hearing.

In any event, the specific allegations orally proffered at the resentencing would not support dismissal of the indictment. "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345 (1974). Furthermore, "a district court may not dismiss an indictment for errors in the grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 478 U.S. 250, 254 (1988). Thus, even if accepted as true, appellant's claims about Franchak would not merit relief.

First, the date confusion during Franchak's testimony would not justify dismissal of the indictment. Appellant was arrested on July 3, 2002. In describing the circumstances of that arrest to the grand jury, Franchak responded to a question by the prosecutor that referred to

43

"August the 2nd" (Franchak Sept. 4, 2003, grand-jury testimony
(attached to Appellant's Motion to Remand for Evidentiary Hearing as
Appendix A) at 24). Thus, Franchak himself did not misstate the date of
arrest. Moreover, the date of arrest was not necessary to the grand
jury's finding of probable cause. Franchak's grand-jury testimony
established that appellant was arrested with a kilogram of cocaine in
his car (*id.* at 26). The actual date was immaterial. The fact that the
indictment itself listed the date of the PWID offense as July 3, 2002,
also indicates that the grand jury ignored the prosecutor's
misstatements.

Second, Franchak's testimony about his participation in the post-
arrest interviews of appellant would not support dismissal. Franchak
testified that after his arrest, appellant waived his rights and agreed to
talk with officers about his recent drug purchase (Franchak Sept. 4,
2003, grand-jury testimony at 27). As Franchak recounted, appellant
identified his supplier and discussed prior purchases of multi-kilogram
amounts (*id.*; Franchak Sept. 9, 2003, grand-jury testimony (attached to
appellant's Motion to Remand for Evidentiary Hearing as Appendix B)
at 28-29). In responding to the prosecutor's questions, Franchak

44

suggested that he personally had interviewed appellant (*id.* (answering affirmatively to question, "Do you recall what he told you about that drug purchase?"); Franchak Sept. 9, 2003, grand-jury testimony at 28 (same to question, "And did Mr. Bailey also tell you that he purchased typically powder cocaine from Mr. Webb?")).

Franchak's testimony about appellant's statements does not merit further inquiry. Even if appellant could establish that Franchak did not personally participate in appellant's interview, the identity of the officers who interviewed appellant is not material. Given appellant's possession of a kilogram of cocaine in plain view, his statement about where he had obtained the kilogram was hardly necessary to a finding of probable cause to find that he possessed cocaine with the intent to distribute it.

In sum, the district court did not err in failing to resolve appellant's claims. Indeed, on August 20, 2012, a motions division of this Court determined, based upon the same allegations, that appellant had shown no basis for an evidentiary hearing. *See American Methyl Corp. v. E.P.A.,* 749 F.2d 826, 832 (D.C. Cir. 1984) (accepting, without further consideration, motion panel's determination as law of the case,

even though there was no "theoretical obstacle to [this Court] reconsidering the motions panel decision").

## CONCLUSION

WHEREFORE, the government respectfully submits that the judgment of the District Court should be affirmed.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney

ELIZABETH TROSMAN
ELIZABETH H. DANELLO
NANCY JACKSON
Assistant United States Attorneys

_____/s/_____
AMANDA J. WINCHESTER
D.C. Bar #488798
Assistant United States Attorney
555 Fourth Street, NW, Room 8104
Washington, D.C. 20530
(202) 252-6829

47

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I HEREBY CERTIFY pursuant to Fed. R. App. P. 32(a)(7)(C) that this brief contains 8,933 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(1), and therefore complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief has been prepared in 14-point Century Schoolbook, a proportionally spaced typeface.

/s/
_____
AMANDA J. WINCHESTER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have caused a copy of the foregoing Brief for Appellee to be served by electronic means, through the Court's CM/ECF system, upon counsel for appellant, Dennis M. Hart, Esq., on this 29th day of May, 2013.

/s/
_____
AMANDA J. WINCHESTER
Assistant United States Attorney

# ADDENDUM FOR APPELLEE

# INDEX

21 U.S.C. § 841...................................................................................A-1

21 U.S.C. § 846.................................................................................A-13

21 U.S.C. § 963.................................................................................A-14

28 U.S.C. § 994(h) ............................................................................A-18

Fed. R. Crim. P. 32 (i)(3)(B) ..............................................................A-27

U.S.S.G. § 4B1.1(b) ...........................................................................A-32

U.S.S.G. § 4B1.1(b)(A) ......................................................................A-32

▷

**Effective: August 3, 2010**

United States Code Annotated Currentness
    Title 21. Food and Drugs (Refs & Annos)
        Chapter 13. Drug Abuse Prevention and Control (Refs & Annos)
            ⌐▤ Subchapter I. Control and Enforcement
                ⌐▤ Part D. Offenses and Penalties
                    → → **§ 841. Prohibited acts A**

(a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--

**(1)** to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

**(2)** to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

(b) Penalties

Except as otherwise provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

**(1)(A)** In the case of a violation of subsection (a) of this section involving--

**(i)** 1 kilogram or more of a mixture or substance containing a detectable amount of heroin;

**(ii)** 5 kilograms or more of a mixture or substance containing a detectable amount of--

**(I)** coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

**(II)** cocaine, its salts, optical and geometric isomers, and salts of isomers;

**(III)** ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A - 1

**(IV)** any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

**(iii)** 280 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

**(iv)** 100 grams or more of phencyclidine (PCP) or 1 kilogram or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

**(v)** 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

**(vi)** 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 100 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

**(vii)** 1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 1,000 or more marijuana plants regardless of weight; or

**(viii)** 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $10,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $20,000,000 if the defendant is an individual or $75,000,000 if the defendant is other than an individual, or both. If any person commits a violation of this subparagraph or of section 849, 859, 860, or 861 of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined in accordance with the preceding sentence. Notwithstanding section 3583 of Title 18, any sentence under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 5 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 10 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eli-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A — 2

gible for parole during the term of imprisonment imposed therein.

(B) In the case of a violation of subsection (a) of this section involving--

(i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;

(ii) 500 grams or more of a mixture or substance containing a detectable amount of--

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

(III) ecgonine, its derivatives, their salts, isomers, and salts of isomers; or

(IV) any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subclauses (I) through (III);

(iii) 28 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;

(iv) 10 grams or more of phencyclidine (PCP) or 100 grams or more of a mixture or substance containing a detectable amount of phencyclidine (PCP);

(v) 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD);

(vi) 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide or 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide;

(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight; or

(viii) 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years and if death or serious bodily injury results from the use of such substance shall be not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $5,000,000 if the defendant is an individual or $25,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $8,000,000 if the defendant is an individual or $50,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposed under this subparagraph shall, in the absence of such a prior conviction, include a term of supervised release of at least 4 years in addition to such term of imprisonment and shall, if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

**(C)** In the case of a controlled substance in schedule I or II, gamma hydroxybutyric acid (including when scheduled as an approved drug product for purposes of section 3(a)(1)(B) of the Hillory J. Farias and Samantha Reid Date-Rape Drug Prohibition Act of 2000), or 1 gram of flunitrazepam, except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than twenty years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years and if death or serious bodily injury results from the use of such substance shall be sentenced to life imprisonment, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $2,000,000 if the defendant is an individual or $10,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 6 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under the provisions of this subparagraph which provide for a mandatory term of imprisonment if death or serious bodily injury results, nor shall a person so sentenced be eligible for parole during the term of such a sentence.

**(D)** In the case of less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil, such person shall, except as provided in paragraphs (4) and (5) of this subsection, be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A — 4

21 U.S.C.A. § 841

Page 5

person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Notwithstanding section 3583 of Title 18, any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(E)(i)** Except as provided in subparagraphs (C) and (D), in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 10 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 15 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,500,000 if the defendant is other than an individual, or both.

**(ii)** If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 20 years and if death or serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not more than 30 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $1,000,000 if the defendant is an individual or $5,000,000 if the defendant is other than an individual, or both.

**(iii)** Any sentence imposing a term of imprisonment under this subparagraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 4 years in addition to such term of imprisonment.

**(2)** In the case of a controlled substance in schedule IV, such person shall be sentenced to a term of imprisonment of not more than 5 years, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $250,000 if the defendant is an individual or $1,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 10 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $500,000 if the defendant is an individual or $2,000,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release of at least one year in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a term of supervised release of at least 2 years in addition to such term of imprisonment.

**(3)** In the case of a controlled substance in schedule V, such person shall be sentenced to a term of imprisonment of not more than one year, a fine not to exceed the greater of that authorized in accordance with the provisions of Title 18, or $100,000 if the defendant is an individual or $250,000 if the defendant is other than an

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such persons shall be sentenced to a term of imprisonment of not more than 4 years, a fine not to exceed the greater of twice that authorized in accordance with the provisions of Title 18, or $200,000 if the defendant is an individual or $500,000 if the defendant is other than an individual, or both. Any sentence imposing a term of imprisonment under this paragraph may, if there was a prior conviction, impose a term of supervised release of not more than 1 year, in addition to such term of imprisonment.

**(4)** Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18.

**(5)** Any person who violates subsection (a) of this section by cultivating or manufacturing a controlled substance on Federal property shall be imprisoned as provided in this subsection and shall be fined any amount not to exceed--

    **(A)** the amount authorized in accordance with this section;

    **(B)** the amount authorized in accordance with the provisions of Title 18;

    **(C)** $500,000 if the defendant is an individual; or

    **(D)** $1,000,000 if the defendant is other than an individual;

or both.

**(6)** Any person who violates subsection (a), or attempts to do so, and knowingly or intentionally uses a poison, chemical, or other hazardous substance on Federal land, and, by such use--

    **(A)** creates a serious hazard to humans, wildlife, or domestic animals,

    **(B)** degrades or harms the environment or natural resources, or

    **(C)** pollutes an aquifer, spring, stream, river, or body of water,

shall be fined in accordance with title 18, United States Code, or imprisoned not more than five years, or both.

**(7) Penalties for distribution. (A) In general.** Whoever, with intent to commit a crime of violence, as

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A - 6

defined in section 16 of Title 18 (including rape), against an individual, violates subsection (a) of this section by distributing a controlled substance or controlled substance analogue to that individual without that individual's knowledge, shall be imprisoned not more than 20 years and fined in accordance with Title 18.

**(B) Definitions.** For purposes of this paragraph, the term "without that individual's knowledge" means that the individual is unaware that a substance with the ability to alter that individual's ability to appraise conduct or to decline participation in or communicate unwillingness to participate in conduct is administered to the individual.

(c) Offenses involving listed chemicals

Any person who knowingly or intentionally--

**(1)** possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter;

**(2)** possesses or distributes a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to manufacture a controlled substance except as authorized by this subchapter; or

**(3)** with the intent of causing the evasion of the recordkeeping or reporting requirements of section 830 of this title, or the regulations issued under that section, receives or distributes a reportable amount of any listed chemical in units small enough so that the making of records or filing of reports under that section is not required;

shall be fined in accordance with Title 18 or imprisoned not more than 20 years in the case of a violation of paragraph (1) or (2) involving a list I chemical or not more than 10 years in the case of a violation of this subsection other than a violation of paragraph (1) or (2) involving a list I chemical, or both.

(d) Boobytraps on Federal property; penalties; "boobytrap" defined

**(1)** Any person who assembles, maintains, places, or causes to be placed a boobytrap on Federal property where a controlled substance is being manufactured, distributed, or dispensed shall be sentenced to a term of imprisonment for not more than 10 years or fined under Title 18, or both.

**(2)** If any person commits such a violation after 1 or more prior convictions for an offense punishable under this subsection, such person shall be sentenced to a term of imprisonment of not more than 20 years or fined under Title 18, or both.

**(3)** For the purposes of this subsection, the term "boobytrap" means any concealed or camouflaged device de-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A – 7

signed to cause bodily injury when triggered by any action of any unsuspecting person making contact with the device. Such term includes guns, ammunition, or explosive devices attached to trip wires or other triggering mechanisms, sharpened stakes, and lines or wires with hooks attached.

(e) Ten-year injunction as additional penalty

In addition to any other applicable penalty, any person convicted of a felony violation of this section relating to the receipt, distribution, manufacture, exportation, or importation of a listed chemical may be enjoined from engaging in any transaction involving a listed chemical for not more than ten years.

(f) Wrongful distribution or possession of listed chemicals

**(1)** Whoever knowingly distributes a listed chemical in violation of this subchapter (other than in violation of a recordkeeping or reporting requirement of section 830 of this title) shall, except to the extent that paragraph (12), (13), or (14) of section 842(a) of this title applies, be fined under Title 18 or imprisoned not more than 5 years, or both.

**(2)** Whoever possesses any listed chemical, with knowledge that the recordkeeping or reporting requirements of section 830 of this title have not been adhered to, if, after such knowledge is acquired, such person does not take immediate steps to remedy the violation shall be fined under Title 18 or imprisoned not more than one year, or both.

(g) Internet sales of date rape drugs

**(1)** Whoever knowingly uses the Internet to distribute a date rape drug to any person, knowing or with reasonable cause to believe that--

    **(A)** the drug would be used in the commission of criminal sexual conduct; or

    **(B)** the person is not an authorized purchaser;

shall be fined under this subchapter or imprisoned not more than 20 years, or both.

**(2)** As used in this subsection:

    **(A)** The term "date rape drug" means--

        **(i)** gamma hydroxybutyric acid (GHB) or any controlled substance analogue of GHB, including gamma

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

butyrolactone (GBL) or 1,4-butanediol;

**(ii)** ketamine;

**(iii)** flunitrazepam; or

**(iv)** any substance which the Attorney General designates, pursuant to the rulemaking procedures prescribed by section 553 of Title 5, to be used in committing rape or sexual assault.

The Attorney General is authorized to remove any substance from the list of date rape drugs pursuant to the same rulemaking authority.

**(B)** The term "authorized purchaser" means any of the following persons, provided such person has acquired the controlled substance in accordance with this chapter:

**(i)** A person with a valid prescription that is issued for a legitimate medical purpose in the usual course of professional practice that is based upon a qualifying medical relationship by a practitioner registered by the Attorney General. A "qualifying medical relationship" means a medical relationship that exists when the practitioner has conducted at least 1 medical evaluation with the authorized purchaser in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The preceding sentence shall not be construed to imply that 1 medical evaluation demonstrates that a prescription has been issued for a legitimate medical purpose within the usual course of professional practice.

**(ii)** Any practitioner or other registrant who is otherwise authorized by their registration to dispense, procure, purchase, manufacture, transfer, distribute, import, or export the substance under this chapter.

**(iii)** A person or entity providing documentation that establishes the name, address, and business of the person or entity and which provides a legitimate purpose for using any "date rape drug" for which a prescription is not required.

**(3)** The Attorney General is authorized to promulgate regulations for record-keeping and reporting by persons handling 1,4-butanediol in order to implement and enforce the provisions of this section. Any record or report required by such regulations shall be considered a record or report required under this chapter.

(h) Offenses involving dispensing of controlled substances by means of the Internet

(1) In general

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

It shall be unlawful for any person to knowingly or intentionally--

(A) deliver, distribute, or dispense a controlled substance by means of the Internet, except as authorized by this subchapter; or

(B) aid or abet (as such terms are used in section 2 of Title 18) any activity described in subparagraph (A) that is not authorized by this subchapter.

(2) Examples

Examples of activities that violate paragraph (1) include, but are not limited to, knowingly or intentionally--

(A) delivering, distributing, or dispensing a controlled substance by means of the Internet by an online pharmacy that is not validly registered with a modification authorizing such activity as required by section 823(f) of this title (unless exempt from such registration);

(B) writing a prescription for a controlled substance for the purpose of delivery, distribution, or dispensation by means of the Internet in violation of section 829(e) of this title;

(C) serving as an agent, intermediary, or other entity that causes the Internet to be used to bring together a buyer and seller to engage in the dispensing of a controlled substance in a manner not authorized by sections 823(f) of this title or 829(e) of this title;

(D) offering to fill a prescription for a controlled substance based solely on a consumer's completion of an online medical questionnaire; and

(E) making a material false, fictitious, or fraudulent statement or representation in a notification or declaration under subsection (d) or (e), respectively, of section 831 of this title.

(3) Inapplicability

(A) This subsection does not apply to--

(i) the delivery, distribution, or dispensation of controlled substances by nonpractitioners to the extent authorized by their registration under this subchapter;

(ii) the placement on the Internet of material that merely advocates the use of a controlled substance or includes pricing information without attempting to propose or facilitate an actual transaction involving a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

controlled substance; or

**(iii)** except as provided in subparagraph (B), any activity that is limited to--

**(I)** the provision of a telecommunications service, or of an Internet access service or Internet information location tool (as those terms are defined in section 231 of Title 47); or

**(II)** the transmission, storage, retrieval, hosting, formatting, or translation (or any combination thereof) of a communication, without selection or alteration of the content of the communication, except that deletion of a particular communication or material made by another person in a manner consistent with section 230(c) of Title 47 shall not constitute such selection or alteration of the content of the communication.

**(B)** The exceptions under subclauses (I) and (II) of subparagraph (A)(iii) shall not apply to a person acting in concert with a person who violates paragraph (1).

(4) Knowing or intentional violation

Any person who knowingly or intentionally violates this subsection shall be sentenced in accordance with subsection (b).

CREDIT(S)

(Pub.L. 91-513, Title II, § 401, Oct. 27, 1970, 84 Stat. 1260; Pub.L. 95-633, Title II, § 201, Nov. 10, 1978, 92 Stat. 3774; Pub.L. 96-359, § 8(c), Sept. 26, 1980, 94 Stat. 1194; Pub.L. 98-473, Title II, §§ 224(a), 502, 503(b)(1), (2), Oct. 12, 1984, 98 Stat. 2030, 2068, 2070; Pub.L. 99-570, Title I, §§ 1002, 1003(a), 1004(a), 1005(a), 1103, Title XV, § 15005, Oct. 27, 1986, 100 Stat. 3207-2, 3207-5, 3207-6, 3207-11, 3207-192; Pub.L. 100-690, Title VI, §§ 6055, 6254(h), 6452(a), 6470(g), (h), 6479, Nov. 18, 1988, 102 Stat. 4318, 4367, 4371, 4378, 4381; Pub.L. 101-647, Title X, § 1002(e), Title XII, § 1202, Title XXXV, § 3599K, Nov. 29, 1990, 104 Stat. 4828, 4830, 4932; Pub.L. 103-322, Title IX, § 90105(a), (c), Title XVIII, § 180201(b)(2)(A), Sept. 13, 1994, 108 Stat. 1987, 1988, 2047; Pub.L. 104-237, Title II, § 206(a), Title III, § 302(a), Oct. 3, 1996, 110 Stat. 3103, 3105; Pub.L. 104-305, § 2(a), (b)(1), Oct. 13, 1996, 110 Stat. 3807; Pub.L. 105-277, Div. E, § 2(a), Oct. 21, 1998, 112 Stat. 2681-759; Pub.L. 106-172, §§ 3(b)(1), 5(b), 9, Feb. 18, 2000, 114 Stat. 9, 10, 13; Pub.L. 107-273, Div. B, Title III, § 3005(a), Title IV, § 4002(d)(2)(A), Nov. 2, 2002, 116 Stat. 1805, 1809; Pub.L. 109-177, Title VII, §§ 711(f)(1)(B), 732, Mar. 9, 2006, 120 Stat. 262, 270; Pub.L. 109-248, Title II, § 201, July 27, 2006, 120 Stat. 611; Pub.L. 110-425, § 3(e), (f), Oct. 15, 2008, 122 Stat. 4828; Pub.L. 111-220, §§ 2(a), 4(a), Aug. 3, 2010, 124 Stat. 2372.)

Current through P.L. 113-9 (excluding P.L. 113-4) approved 5-1-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A −12

21 U.S.C.A. § 846        Page 1

**C**

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
    Title 21. Food and Drugs (Refs & Annos)
        Chapter 13. Drug Abuse Prevention and Control (Refs & Annos)
            Subchapter I. Control and Enforcement
                Part D. Offenses and Penalties
                →→ **§ 846. Attempt and conspiracy**

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

CREDIT(S)

(Pub.L. 91-513, Title II, § 406, Oct. 27, 1970, 84 Stat. 1265; Pub.L. 100-690, Title VI, § 6470(a), Nov. 18, 1988, 102 Stat. 4377.)

Current through P.L. 113-9 (excluding P.L. 113-4) approved 5-1-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

21 U.S.C.A. § 963                                                                                    Page 1

C

**Effective:[See Text Amendments]**

United States Code Annotated Currentness
   Title 21. Food and Drugs (Refs & Annos)
     Chapter 13. Drug Abuse Prevention and Control (Refs & Annos)
      Subchapter II. Import and Export (Refs & Annos)
       **§ 963. Attempt and conspiracy**

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

CREDIT(S)

(Pub.L. 91-513, Title III, § 1013, Oct. 27, 1970, 84 Stat. 1291; Pub.L. 100-690, Title VI, § 6470(a), Nov. 18, 1988, 102 Stat. 4377.)

Current through P.L. 113-9 (excluding P.L. 113-4) approved 5-1-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

28 U.S.C.A. § 994                                                                                                    Page 1

▷

**Effective: October 6, 2006**

United States Code Annotated Currentness
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    🕮 Part III. Court Officers and Employees (Refs & Annos)
      🕮 Chapter 58. United States Sentencing Commission (Refs & Annos)
        →→ **§ 994. Duties of the Commission**

**(a)** The Commission, by affirmative vote of at least four members of the Commission, and pursuant to its rules and regulations and consistent with all pertinent provisions of any Federal statute shall promulgate and distribute to all courts of the United States and to the United States Probation System--

**(1)** guidelines, as described in this section, for use of a sentencing court in determining the sentence to be imposed in a criminal case, including--

**(A)** a determination whether to impose a sentence to probation, a fine, or a term of imprisonment;

**(B)** a determination as to the appropriate amount of a fine or the appropriate length of a term of probation or a term of imprisonment;

**(C)** a determination whether a sentence to a term of imprisonment should include a requirement that the defendant be placed on a term of supervised release after imprisonment, and, if so, the appropriate length of such a term;

**(D)** a determination whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively; and

**(E)** a determination under paragraphs (6) and (11) of section 3563(b) of title 18;

**(2)** general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in section 3553(a)(2) of title 18, United States Code, including the appropriate use of--

**(A)** the sanctions set forth in sections 3554, 3555, and 3556 of title 18;

**(B)** the conditions of probation and supervised release set forth in sections 3563(b) and 3583(d) of title 18;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A −15

(C) the sentence modification provisions set forth in sections 3563(c), 3564, 3573, and 3582(c) of title 18;

(D) the fine imposition provisions set forth in section 3572 of title 18;

(E) the authority granted under rule 11(e)(2) of the Federal Rules of Criminal Procedure to accept or reject a plea agreement entered into pursuant to rule 11(e)(1); and

(F) the temporary release provisions set forth in section 3622 of title 18, and the prerelease custody provisions set forth in section 3624(c) of title 18; and

(3) guidelines or general policy statements regarding the appropriate use of the provisions for revocation of probation set forth in section 3565 of title 18, and the provisions for modification of the term or conditions of supervised release and revocation of supervised release set forth in section 3583(e) of title 18.

(b)(1) The Commission, in the guidelines promulgated pursuant to subsection (a)(1), shall, for each category of offense involving each category of defendant, establish a sentencing range that is consistent with all pertinent provisions of title 18, United States Code.

(2) If a sentence specified by the guidelines includes a term of imprisonment, the maximum of the range established for such a term shall not exceed the minimum of that range by more than the greater of 25 percent or 6 months, except that, if the minimum term of the range is 30 years or more, the maximum may be life imprisonment.

(c) The Commission, in establishing categories of offenses for use in the guidelines and policy statements governing the imposition of sentences of probation, a fine, or imprisonment, governing the imposition of other authorized sanctions, governing the size of a fine or the length of a term of probation, imprisonment, or supervised release, and governing the conditions of probation, supervised release, or imprisonment, shall consider whether the following matters, among others, have any relevance to the nature, extent, place of service, or other incidents [FN1] of an appropriate sentence, and shall take them into account only to the extent that they do have relevance--

(1) the grade of the offense;

(2) the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense;

(3) the nature and degree of the harm caused by the offense, including whether it involved property, irreplaceable property, a person, a number of persons, or a breach of public trust;

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A −16

USCA Case #11-3111    Page 3

(4) the community view of the gravity of the offense;

(5) the public concern generated by the offense;

(6) the deterrent effect a particular sentence may have on the commission of the offense by others; and

(7) the current incidence of the offense in the community and in the Nation as a whole.

(d) The Commission in establishing categories of defendants for use in the guidelines and policy statements governing the imposition of sentences of probation, a fine, or imprisonment, governing the imposition of other authorized sanctions, governing the size of a fine or the length of a term of probation, imprisonment, or supervised release, and governing the conditions of probation, supervised release, or imprisonment, shall consider whether the following matters, among others, with respect to a defendant, have any relevance to the nature, extent, place of service, or other incidents [FN1] of an appropriate sentence, and shall take them into account only to the extent that they do have relevance--

(1) age;

(2) education;

(3) vocational skills;

(4) mental and emotional condition to the extent that such condition mitigates the defendant's culpability or to the extent that such condition is otherwise plainly relevant;

(5) physical condition, including drug dependence;

(6) previous employment record;

(7) family ties and responsibilities;

(8) community ties;

(9) role in the offense;

(10) criminal history; and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A −17

(11) degree of dependence upon criminal activity for a livelihood.

The Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders.

(e) The Commission shall assure that the guidelines and policy statements, in recommending a term of imprisonment or length of a term of imprisonment, reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant.

(f) The Commission, in promulgating guidelines pursuant to subsection (a)(1), shall promote the purposes set forth in section 991(b)(1), with particular attention to the requirements of subsection 991(b)(1)(B) for providing certainty and fairness in sentencing and reducing unwarranted sentence disparities.

(g) The Commission, in promulgating guidelines pursuant to subsection (a)(1) to meet the purposes of sentencing as set forth in section 3553(a)(2) of title 18, United States Code, shall take into account the nature and capacity of the penal, correctional, and other facilities and services available, and shall make recommendations concerning any change or expansion in the nature or capacity of such facilities and services that might become necessary as a result of the guidelines promulgated pursuant to the provisions of this chapter. The sentencing guidelines prescribed under this chapter shall be formulated to minimize the likelihood that the Federal prison population will exceed the capacity of the Federal prisons, as determined by the Commission.

(h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and--

(1) has been convicted of a felony that is--

(A) a crime of violence; or

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46; and

(2) has previously been convicted of two or more prior felonies, each of which is--

(A) a crime of violence; or

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A −18

chapter 705 of title 46.

**(i)** The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant--

**(1)** has a history of two or more prior Federal, State, or local felony convictions for offenses committed on different occasions;

**(2)** committed the offense as part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income;

**(3)** committed the offense in furtherance of a conspiracy with three or more persons engaging in a pattern of racketeering activity in which the defendant participated in a managerial or supervisory capacity;

**(4)** committed a crime of violence that constitutes a felony while on release pending trial, sentence, or appeal from a Federal, State, or local felony for which he was ultimately convicted; or

**(5)** committed a felony that is set forth in section 401 or 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 841 and 960), and that involved trafficking in a substantial quantity of a controlled substance.

**(j)** The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

**(k)** The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.

**(l)** The Commission shall insure that the guidelines promulgated pursuant to subsection (a)(1) reflect--

**(1)** the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant is convicted of--

**(A)** multiple offenses committed in the same course of conduct that result in the exercise of ancillary jurisdiction over one or more of the offenses; and

**(B)** multiple offenses committed at different times, including those cases in which the subsequent offense is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A −19

a violation of section 3146 (penalty for failure to appear) or is committed while the person is released pursuant to the provisions of section 3147 (penalty for an offense committed while on release) of title 18; and

(2) the general inappropriateness of imposing consecutive terms of imprisonment for an offense of conspiring to commit an offense or soliciting commission of an offense and for an offense that was the sole object of the conspiracy or solicitation.

(m) The Commission shall insure that the guidelines reflect the fact that, in many cases, current sentences do not accurately reflect the seriousness of the offense. This will require that, as a starting point in its development of the initial sets of guidelines for particular categories of cases, the Commission ascertain the average sentences imposed in such categories of cases prior to the creation of the Commission, and in cases involving sentences to terms of imprisonment, the length of such terms actually served. The Commission shall not be bound by such average sentences, and shall independently develop a sentencing range that is consistent with the purposes of sentencing described in section 3553(a)(2) of title 18, United States Code.

(n) The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

(o) The Commission periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section. In fulfilling its duties and in exercising its powers, the Commission shall consult with authorities on, and individual and institutional representatives of, various aspects of the Federal criminal justice system. The United States Probation System, the Bureau of Prisons, the Judicial Conference of the United States, the Criminal Division of the United States Department of Justice, and a representative of the Federal Public Defenders shall submit to the Commission any observations, comments, or questions pertinent to the work of the Commission whenever they believe such communication would be useful, and shall, at least annually, submit to the Commission a written report commenting on the operation of the Commission's guidelines, suggesting changes in the guidelines that appear to be warranted, and otherwise assessing the Commission's work.

(p) The Commission, at or after the beginning of a regular session of Congress, but not later than the first day of May, may promulgate under subsection (a) of this section and submit to Congress amendments to the guidelines and modifications to previously submitted amendments that have not taken effect, including modifications to the effective dates of such amendments. Such an amendment or modification shall be accompanied by a statement of the reasons therefor and shall take effect on a date specified by the Commission, which shall be no earlier than 180 days after being so submitted and no later than the first day of November of the calendar year in which the amendment or modification is submitted, except to the extent that the effective date is revised or the amendment is otherwise modified or disapproved by Act of Congress.

(q) The Commission and the Bureau of Prisons shall submit to Congress an analysis and recommendations concerning maximum utilization of resources to deal effectively with the Federal prison population. Such report

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

shall be based upon consideration of a variety of alternatives, including--

(1) modernization of existing facilities;

(2) inmate classification and periodic review of such classification for use in placing inmates in the least restrictive facility necessary to ensure adequate security; and

(3) use of existing Federal facilities, such as those currently within military jurisdiction.

(r) The Commission, not later than two years after the initial set of sentencing guidelines promulgated under subsection (a) goes into effect, and thereafter whenever it finds it advisable, shall recommend to the Congress that it raise or lower the grades, or otherwise modify the maximum penalties, of those offenses for which such an adjustment appears appropriate.

(s) The Commission shall give due consideration to any petition filed by a defendant requesting modification of the guidelines utilized in the sentencing of such defendant, on the basis of changed circumstances unrelated to the defendant, including changes in--

(1) the community view of the gravity of the offense;

(2) the public concern generated by the offense; and

(3) the deterrent effect particular sentences may have on the commission of the offense by others.

(t) The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

(u) If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced.

(v) The Commission shall ensure that the general policy statements promulgated pursuant to subsection (a)(2) include a policy limiting consecutive terms of imprisonment for an offense involving a violation of a general prohibition and for an offense involving a violation of a specific prohibition encompassed within the general prohibition.

(w)(1) The Chief Judge of each district court shall ensure that, within 30 days following entry of judgment in

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

USCA Case #11-3111      Document #1438310          Filed: 05/29/2013      Page 82 of 92

every criminal case, the sentencing court submits to the Commission, in a format approved and required by the Commission, a written report of the sentence, the offense for which it is imposed, the age, race, sex of the offender, and information regarding factors made relevant by the guidelines. The report shall also include--

(A) the judgment and commitment order;

(B) the written statement of reasons for the sentence imposed (which shall include the reason for any departure from the otherwise applicable guideline range and which shall be stated on the written statement of reasons form issued by the Judicial Conference and approved by the United States Sentencing Commission);

(C) any plea agreement;

(D) the indictment or other charging document;

(E) the presentence report; and

(F) any other information as the Commission finds appropriate.

The information referred to in subparagraphs (A) through (F) shall be submitted by the sentencing court in a format approved and required by the Commission.

(2) The Commission shall, upon request, make available to the House and Senate Committees on the Judiciary, the written reports and all underlying records accompanying those reports described in this section, as well as other records received from courts.

(3) The Commission shall submit to Congress at least annually an analysis of these documents, any recommendations for legislation that the Commission concludes is warranted by that analysis, and an accounting of those districts that the Commission believes have not submitted the appropriate information and documents required by this section.

(4) The Commission shall make available to the Attorney General, upon request, such data files as the Commission itself may assemble or maintain in electronic form as a result of the information submitted under paragraph (1). Such data files shall be made available in electronic form and shall include all data fields requested, including the identity of the sentencing judge.

(x) The provisions of section 553 of title 5, relating to publication in the Federal Register and public hearing procedure, shall apply to the promulgation of guidelines pursuant to this section.

(y) The Commission, in promulgating guidelines pursuant to subsection (a)(1), may include, as a component of a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A —22

fine, the expected costs to the Government of any imprisonment, supervised release, or probation sentence that is ordered.

CREDIT(S)

(Added Pub.L. 98-473, Title II, § 217(a), Oct. 12, 1984, 98 Stat. 2019; amended Pub.L. 99-217, § 3, Dec. 26, 1985, 99 Stat. 1728; Pub.L. 99-363, § 2, July 11, 1986, 100 Stat. 770; Pub.L. 99-570, Title I, §§ 1006(b), 1008, Oct. 27, 1986, 100 Stat. 3207-7; Pub.L. 99-646, §§ 6(b), 56, Nov. 10, 1986, 100 Stat. 3592, 3611; Pub.L. 100-182, §§ 16(b), 23, Dec. 7, 1987, 101 Stat. 1269, 1271; Pub.L. 100-690, Title VII, §§ 7083, 7103(b), 7109, Nov. 18, 1988, 102 Stat. 4408, 4417, 4419; Pub.L. 103-322, Title II, § 20403(b), Title XXVIII, § 280005(c)(4), Title XXXIII, § 330003(f)(1), Sept. 13, 1994, 108 Stat. 1825, 2097, 2141; Pub.L. 108-21, Title IV, § 401(h), (k), Apr. 30, 2003, 117 Stat. 672, 674; Pub.L. 109-177, Title VII, § 735, Mar. 9, 2006, 120 Stat. 271; Pub.L. 109-304 , § 17(f)(1), Oct. 6, 2006, 120 Stat. 1708.)

[FN1] So in original. Probably should be "incidence".

Current through P.L. 113-9 (excluding P.L. 113-4) approved 5-1-13

Westlaw. (C) 2013 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**C**

United States Code Annotated Currentness
    Federal Rules of Criminal Procedure for the United States District Courts (Refs & Annos)
        VII. Post-Conviction Procedures
            → → **Rule 32. Sentencing and Judgment**

**(a) [Reserved.]**

**(b) Time of Sentencing.**

    **(1) In General.**The court must impose sentence without unnecessary delay.

    **(2) Changing Time Limits.**The court may, for good cause, change any time limits prescribed in this rule.

**(c) Presentence Investigation.**

    **(1) Required Investigation.**

        **(A) In General.**The probation officer must conduct a presentence investigation and submit a report to the court before it imposes sentence unless:

            **(i)** 18 U.S.C. § 3593(c) or another statute requires otherwise; or

            **(ii)** the court finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553, and the court explains its finding on the record.

        **(B) Restitution.** If the law permits restitution, the probation officer must conduct an investigation and submit a report that contains sufficient information for the court to order restitution.

    **(2) Interviewing the Defendant.**The probation officer who interviews a defendant as part of a presentence investigation must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview.

**(d) Presentence Report.**

    **(1) Applying the Advisory Sentencing Guidelines.**The presentence report must:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A −24

(A) identify all applicable guidelines and policy statements of the Sentencing Commission;

(B) calculate the defendant's offense level and criminal history category;

(C) state the resulting sentencing range and kinds of sentences available;

(D) identify any factor relevant to:

    (i) the appropriate kind of sentence, or

    (ii) the appropriate sentence within the applicable sentencing range; and

(E) identify any basis for departing from the applicable sentencing range.

(2) **Additional Information.** The presentence report must also contain the following:

(A) the defendant's history and characteristics, including:

    (i) any prior criminal record;

    (ii) the defendant's financial condition; and

    (iii) any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment;

(B) information that assesses any financial, social, psychological, and medical impact on any victim;

(C) when appropriate, the nature and extent of nonprison programs and resources available to the defendant;

(D) when the law provides for restitution, information sufficient for a restitution order;

(E) if the court orders a study under 18 U.S.C. § 3552(b), any resulting report and recommendation;

(F) a statement of whether the government seeks forfeiture under Rule 32.2 and any other law; and

(G) any other information that the court requires, including information relevant to the factors under 18

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

U.S.C. § 3553(a).

**(3) Exclusions.**The presentence report must exclude the following:

  **(A)** any diagnoses that, if disclosed, might seriously disrupt a rehabilitation program;

  **(B)** any sources of information obtained upon a promise of confidentiality; and

  **(C)** any other information that, if disclosed, might result in physical or other harm to the defendant or others.

**(e) Disclosing the Report and Recommendation.**

**(1) Time to Disclose.**Unless the defendant has consented in writing, the probation officer must not submit a presentence report to the court or disclose its contents to anyone until the defendant has pleaded guilty or nolo contendere, or has been found guilty.

**(2) Minimum Required Notice.**The probation officer must give the presentence report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period.

**(3) Sentence Recommendation.**By local rule or by order in a case, the court may direct the probation officer not to disclose to anyone other than the court the officer's recommendation on the sentence.

**(f) Objecting to the Report.**

**(1) Time to Object.**Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report.

**(2) Serving Objections.**An objecting party must provide a copy of its objections to the opposing party and to the probation officer.

**(3) Action on Objections.**After receiving objections, the probation officer may meet with the parties to discuss the objections. The probation officer may then investigate further and revise the presentence report as appropriate.

**(g) Submitting the Report.**At least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A −26

**(h) Notice of Possible Departure from Sentencing Guidelines.**Before the court may depart from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission, the court must give the parties reasonable notice that it is contemplating such a departure. The notice must specify any ground on which the court is contemplating a departure.

**(i) Sentencing.**

**(1) In General.**At sentencing, the court:

**(A)** must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report;

**(B)** must give to the defendant and an attorney for the government a written summary of--or summarize in camera--any information excluded from the presentence report under Rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information;

**(C)** must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence; and

**(D)** may, for good cause, allow a party to make a new objection at any time before sentence is imposed.

**(2) Introducing Evidence; Producing a Statement.**The court may permit the parties to introduce evidence on the objections. If a witness testifies at sentencing, Rule 26.2(a)-(d) and (f) applies. If a party fails to comply with a Rule 26.2 order to produce a witness's statement, the court must not consider that witness's testimony.

**(3) Court Determinations.**At sentencing, the court:

**(A)** may accept any undisputed portion of the presentence report as a finding of fact;

**(B)** must--for any disputed portion of the presentence report or other controverted matter--rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and

**(C)** must append a copy of the court's determinations under this rule to any copy of the presentence report made available to the Bureau of Prisons.

**(4) Opportunity to Speak.**

**(A) By a Party.**Before imposing sentence, the court must:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(i) provide the defendant's attorney an opportunity to speak on the defendant's behalf;

(ii) address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence; and

(iii) provide an attorney for the government an opportunity to speak equivalent to that of the defendant's attorney.

**(B) By a Victim.** Before imposing sentence, the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard.

**(C) In Camera Proceedings.** Upon a party's motion and for good cause, the court may hear in camera any statement made under Rule 32(i)(4).

**(j) Defendant's Right to Appeal.**

**(1) Advice of a Right to Appeal.**

**(A) Appealing a Conviction.** If the defendant pleaded not guilty and was convicted, after sentencing the court must advise the defendant of the right to appeal the conviction.

**(B) Appealing a Sentence.** After sentencing--regardless of the defendant's plea--the court must advise the defendant of any right to appeal the sentence.

**(C) Appeal Costs.** The court must advise a defendant who is unable to pay appeal costs of the right to ask for permission to appeal in forma pauperis.

**(2) Clerk's Filing of Notice.** If the defendant so requests, the clerk must immediately prepare and file a notice of appeal on the defendant's behalf.

**(k) Judgment.**

**(1) In General.** In the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence. If the defendant is found not guilty or is otherwise entitled to be discharged, the court must so order. The judge must sign the judgment, and the clerk must enter it.

**(2) Criminal Forfeiture.** Forfeiture procedures are governed by Rule 32.2.

CREDIT(S)

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

(As amended Feb. 28, 1966, eff. July 1, 1966; Apr. 24, 1972, eff. Oct. 1, 1972; Apr. 22, 1974, eff. Dec. 1, 1975; July 31, 1975, Pub.L. 94-64, § 3(31)-(34), 89 Stat. 376; Apr. 30, 1979, eff. Aug. 1, 1979, Dec. 1, 1980; Oct. 12, 1982, Pub.L. 97-291, § 3, 96 Stat. 1249; Apr. 28, 1983, eff. Aug. 1, 1983; Oct. 12, 1984, Pub.L. 98-473, Title II, § 215(a), 98 Stat. 2014; Nov. 10, 1986, Pub.L. 99-646, § 25(a), 100 Stat. 3597; Mar. 9, 1987, eff. Aug. 1, 1987; Apr. 25, 1989, eff. Dec. 1, 1989; Apr. 30, 1991, eff. Dec. 1, 1991; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 29, 1994, eff. Dec. 1, 1994; Sept. 13, 1994, Pub.L. 103-322, Title XXIII, § 230101(b), 108 Stat. 2078; Apr. 23, 1996, eff. Dec. 1, 1996; Apr. 24, 1996, Pub.L. 104-132, Title II, § 207(a), 110 Stat. 1236; Apr. 17, 2000, eff. Dec. 1, 2000; Apr. 29, 2002, eff. Dec. 1, 2002; Apr. 30, 2007, eff. Dec. 1, 2007; Apr. 23, 2008, eff. Dec. 1, 2008; Mar. 26, 2009, eff. Dec. 1, 2009; Apr. 26, 2011, eff. Dec. 1, 2011.)

RULE APPLICABLE TO OFFENSES COMMITTED PRIOR TO NOV. 1, 1987

This rule as in effect prior to amendment by Pub.L. 98-473 read as follows:

**"Rule 32. Sentence and Judgment**

**"(a) Sentence.**

**"(1) Imposition of Sentence.** Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall

**"(A)** determine that the defendant and the defendant's counsel have had the opportunity to read and discuss the presentence investigation report made available pursuant to subdivision (c)(3)(A) or summary thereof made available pursuant to subdivision (c)(3)(B);

**"(B)** afford counsel an opportunity to speak on behalf of the defendant; and

**"(C)** address the defendant personally and ask the defendant if the defendant wishes to make a statement in the defendant's own behalf and to present any information in mitigation of punishment.

The attorney for the government shall have an equivalent opportunity to speak to the court.

**"(2) Notification of Right to Appeal.** After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal, and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis. There shall be no duty on the court to advise the defendant of any right of appeal after sentence is imposed following a plea of guilty or nolo contendere. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant.

**"(b) Judgment.**

**"(1) In General.** A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

judgment shall be entered accordingly. The judgment shall be signed by the judge and entered by the clerk.

**"(2) Criminal Forfeiture.** When a verdict contains a finding of property subject to a criminal forfeiture, the judgment of criminal forfeiture shall authorize the Attorney General to seize the interest or property subject to forfeiture, fixing such terms and conditions as the court shall deem proper.

**"(c) Presentence Investigation.**

**"(1) When Made.** The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investigation and report, or the court finds that there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record.

"The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time.

**"(2) Report.** The presentence report shall contain--

**"(A)** any prior criminal record of the defendant;

**"(B)** a statement of the circumstances of the commission of the offense and circumstances affecting the defendant's behavior;

**"(C)** information concerning any harm, including financial, social, psychological, and physical harm, done to or loss suffered by any victim of the offense; and

**"(D)** any other information that may aid the court in sentencing, including the restitution needs of any victim of the offense.

**"(3) Disclosure.**

**"(A)** At a reasonable time before imposing sentence the court shall permit the defendant and the defendant's counsel to read the report of the presentence investigation exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opinions which, if disclosed, might seriously disrupt a program of rehabilitation; or sources of information obtained upon a promise of confidentiality; or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons. The court shall afford the defendant and the defendant's counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

"**(B)** If the court is of the view that there is information in the presentence report which should not be disclosed under subdivision (c)(3)(A) of this rule, the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant and the defendant's counsel an opportunity to comment thereon. The statement may be made to the parties in camera.

"**(C)** Any material which may be disclosed to the defendant and the defendant's counsel shall be disclosed to the attorney for the government.

"**(D)** If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons or the Parole Commission.

"**(E)** Any copies of the presentence investigation report made available to the defendant and the defendant's counsel and the attorney for the government shall be returned to the probation officer immediately following the imposition of sentence or the granting of probation, unless the court, in its discretion otherwise directs.

"**(F)** The reports of studies and recommendations contained therein made by the Director of the Bureau of Prisons or the Parole Commission pursuant to 18 U.S.C. §§ 4205(c), 4252, 5010(e), or 5037(c) shall be considered a presentence investigation within the meaning of subdivision (c)(3) of this rule.

"**(d) Plea Withdrawal.** If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4205(c), the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.

"**(e) Probation.** After conviction of an offense not punishable by death or by life imprisonment, the defendant may be placed on probation if permitted by law.

"**(f) [Revocation of Probation.]** (Abrogated Apr. 30, 1979, eff. Dec. 1, 1980)."

For applicability of sentencing provisions to offenses, see Effective Date and Savings Provisions, etc., note, section 235 of Pub.L. 98-473, as amended, set out under section 3551 of Title 18, Crimes and Criminal Procedure.

Amendments received to 2-19-13

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

A —31

**PART B - CAREER OFFENDERS AND CRIMINAL LIVELIHOOD**

§4B1.1.     **Career Offender**

(a)     A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b)     Except as provided in subsection (c), if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply. A career offender's criminal history category in every case under this subsection shall be Category VI.

| Offense Statutory Maximum | Offense Level* |
|---|---|
| (A)  Life | 37 |
| (B)  25 years or more | 34 |
| (C)  20 years or more, but less than 25 years | 32 |
| (D)  15 years or more, but less than 20 years | 29 |
| (E)  10 years or more, but less than 15 years | 24 |
| (F)  5 years or more, but less than 10 years | 17 |
| (G)  More than 1 year, but less than 5 years | 12. |

*If an adjustment from §3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment.

(c)     If the defendant is convicted of 18 U.S.C. § 924(c) or § 929(a), and the defendant is determined to be a career offender under subsection (a), the applicable guideline range shall be determined as follows:

(1)     If the only count of conviction is 18 U.S.C. § 924(c) or § 929(a), the applicable guideline range shall be determined using the table in subsection (c)(3).

(2)     In the case of multiple counts of conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) or § 929(a), the guideline range shall be the greater of—

(A)     the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) or § 929(a) count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) or § 929(a) count(s); and

(B)     the guideline range determined using the table in subsection

– 369 –

A –32